# Pellum *v.* The State.

### *Indictment for Grand Larceny.*

1. *Grand juror as witness.*—By express statutory provision, a grand juror may be required to disclose the testimony of any witness examined before that body, for the purpose of impeaching or sustaining his testimony before the court, or on a charge of perjury against him (Code, § 4351); but there are other cases, also, in which he may testify as to the evidence given by any witness before the grand jury, against the objection of the witness himself.

2. *Error without injury in admission of evidence.*—The admission of evidence in a criminal case, against the objection of the defendant, even if erroneous, will not work a reversal, when the record affirmatively shows that the sole tendency of the evidence was beneficial to him, as when it sustains his defense.

3. *Alibi; charge as to burden of proof.*—The burden of proof as to an *alibi* is on the defendant; and a charge which instructs the jury, "that it is the duty of the defendant, in proving an *alibi,* to reasonably satisfy the jury that he was elsewhere at the time of the commission of the offense," asserts this principle in substance.

4. *General charge on evidence.*—When there is any evidence whatever, however weak and inconclusive it may be, directly tending to show the defendant's guilt, its sufficiency should be submitted to the jury, and a general charge in his favor is properly refused.

5. *Argumentative charges* to the jury are properly refused, though the propositions asserted might properly be urged by counsel before the jury.

FROM the Circuit Court of Dale.

Tried before the Hon. JESSE M. CARMICHAEL.

The defendant in this case, Ambrose Pellum, was indicted, jointly with Walter Pellum, a younger brother, for the larceny of a gold watch and five dollars in silver, the personal property of *John* Reynolds, charged to have been feloniously taken and carried away from the dwelling-house of *Robert* Reynolds. Being jointly tried, and pleading not guilty, Ambrose was found guilty, while Walter was discharged. On the trial, as appears from the bill of exceptions, the State introduced *Len.* Reynolds as a witness, who seems to have been the prosecutor, though there is no evidence of his identity with *John* Reynolds, the alleged owner of the stolen property; nor was any objection made on the ground of variance. Said Reynolds testified, in brief, that on Saturday night, March 23d, 1889, he went to the house of defendant's father, and found defendant preparing to go to bed, but

[Pellum v. The State.]

persuaded him to dress and go out with him; that they first went to a drug-store in the village, which was kept by witness' father, and there drank some "diluted alcohol;" that they then went to the post-office, and remained there, talking, until about eleven o'clock, when they returned together to their respective homes, which were near the post-office, but in opposite directions from it; that he found the door of his room open, but undressed, put his watch "on the top of the library near the bed," and retired; that he was awakened about four o'clock in the morning, feeling cold, and, on getting up, found his watch and trunk both gone; that he aroused the family, and, on searching, found the trunk outside of the yard, broken open, and the money missing; and that he had never since seen his watch.   As to the amount of money in the trunk, he testified on the trial that it was $19.50, but admitted that before the grand jury he had said that it was $5.00; and his declarations at other times were proved, fixing the amount at $3.00, and $3.50.   He testified, also, that among the pieces of money in his trunk was a half-dollar, peculiarly marked, which he recognized a few days afterwards, when he saw Mrs. Peacock, who was a sister of the defendant, pay it to one Loftin; and he denied, on cross-examination, that he had lost the watch, or the money, while playing cards with the defendant.

Mrs. Peacock was introduced as a witness for the prosecution, and testified that the defendant gave her the marked half-dollar, but said he gave it to her during the afternoon of Saturday, March 23d, 1889; and the bill of exceptions states that, during the argument to the jury, the counsel for the prosecution insisted that her testimony was untrue as to the time when she received the money.   The defendant did not make any statement as a witness in his own behalf, but his father and mother each testified to facts tending to establish an *alibi*—that he came home about eleven o'clock Saturday night, went to bed, and spent the night there; and a younger brother testified to declarations made by said Len. Reynolds, some time after the alleged larceny, to the effect that defendant had won his watch, which he staked against $40, that he desired to redeem it, "but would die before he would let his father know he had so lost it."   John W. Simmons, the foreman of a former grand jury, before whom the defendant had been examined as a witness, was examined as a witness for the prosecution, and testified that the defendant on that occasion, being questioned as to his knowledge

[Pellum v. The State.]

of any gaming cases, stated that he had won a gold watch and some money from said Len. Reynolds; and the court admitted this evidence, against the objection and exception of the defendant.

"This being the substance of all the evidence before the jury, the court charged the jury, among other things, that it is the duty of the defendants, in proving an *alibi*, to reasonably satisfy the jury that they were elsewhere at the time of the commission of the offense." The defendant excepted to this charge as given, and also to the refusal of the following charges, which were asked by him in writing: (1.) "Any declaration made by Ambrose Pellum on Sunday morning, or afterwards, that he had won the watch from Len. Reynolds, would not have been admissible in his behalf on his trial for the larceny of the watch." (2.) "If the State introduces a witness to testify in a case, it indorses said witness as truthful and credible, and is estopped from saying that he intentionally swore falsely." (1.) "If the State introduces a witness on the trial of a cause, it indorses him as being credible and worthy of belief, and is estopped from impeaching him, or saying that he has corruptly sworn false; and if Mrs. Peacock has testified that she received the half-dollar from Ambrose Pellum at a time which proves that it was not taken from the trunk, the State is estopped from saying that she knowingly swore falsely." (4.) "If the jury believe the evidence, they must find for the defendants."

H. H. BLACKMAN, for appellant.—(1.) On grounds of public policy, in furtherance of justice, the proceedings had before the grand jury are required to be conducted secretly, and the jurors themselves are sworn to secrecy.—Code, § 4329; 1 Greenl. 252. The statute creates two exceptions, and but two (Code, § 4351); and the maxim applies, *Expressio unius est exclusio alterius.—People v. Sharp*, 1 Amer. St. 851. (2.) The first charge asked ought to have been given.—*Allen v. State*, 71 Ala. 5; *Cooper v. State*, 63 Ala. 80; 1 Amer. St. 851. (3.) The second and third charges each assert a correct proposition.— *Warren v. Gabriel*, 51 Ala. 235; *Baker v. Bell*, 46 Ala. 216; *Coleman v. Siler*, 74 Ala. 435. (4.) The evidence for the prosecution was involved. in contradictions, and wholly insufficient to sustain a conviction. The general charge asked should have been given.

[Pellum v. The State.]

WM. L. MARTIN, Attorney-General, and HENRY L. MARTIN, for the State, cited Thompson & M. on Juries, 746, notes 3–5; 9 Amer. & En. Encyc. Law, 17; *Jones v. Turpin*, 6 Heisk. (Tenn.) 181; *Burdick v. Hunt*, 43 Ind. 381; *Sands v. Robinson*, 12 Sm. & Mar. 704; *Way v. Butterworth*, 106 Mass. 75; *Com. v. Mead*, 12 Gray, 167; 3 Watts, Penn. 56; 7 Ired. Law, 96.

McCLELLAN, J.—The appellant was convicted under an indictment charging him with the larceny of a watch and certain money from one Reynolds. The line of his defense appears to have been, that he won the watch and money from the prosecutor, at a game of cards. Against his objection, the State was allowed to prove by the foreman of a grand jury, that the defendant, having been summoned before that body as a witness in the investigation of another matter, was examined with respect to his knowledge as to gambling in the community, and had stated on this examination that he had played cards, on the night of the alleged larceny, with the said Reynolds, "and won his gold watch and —— in money." It is insisted for appellant, that the only instances in which a grand juror will be permitted to disclose evidence adduced before the grand jury, are those in which the disclosure may be *required* under section 4351 of the Code, for the purpose of ascertaining whether it is consistent with the testimony given by the witness before the court, or on a charge of perjury against him; and that, inasmuch as this was not a charge of perjury, and the defendant was not examined as a witness on this trial, the case does not fall within the statute, and the evidence of the grand juror was erroneously admitted. It would seem, on authority, that this contention is untenable, and that such testimony is competent for other purposes than those set forth in the section quoted from.—Thomp. & Merr. on Juries, § 706 (6); *State v. Broughton*, 7 Ired. (N. C.) 96; *U. S. v. Porter*, 2 Cranch, C. C. 60; *U. S. v. Charles*, *Ib.* 76.

2. Be that as it may, however, if this testimony was incompetent, it comes clearly within the principle settled in the case of *Marks v. State*, 86 Ala. 99, to the effect, that an erroneous ruling of the trial court, to which the defendant excepts, will not avail him on appeal, when this court can affirmatively determine that a ruling in line with defendant's objection could only have been prejudicial to him. It appears in this record, as we have seen, that the defendant

[Pellum v. The State.]

claimed that he had won the property, alleged to have been stolen, from Reynolds at cards. His statement before the grand jury went directly to support this theory of the defense, and we can not conceive but that its sole tendency was beneficial to him. Whether its admission was error or not, therefore, a reversal can not be had on account of it.

3. There was no error in the charge given at the instance of the State, to the effect that "it is the duty of the defendant, in proving an *alibi*, to reasonably satisfy the jury that he was elsewhere at the time of the commission of the offense."—*Spencer v. State*, 54 Ala. 124; 1 Amer. & Eng. Encyc. of Law, pp. 454, 455. We understand this charge to be simply, that the burden of proof as to an *alibi* is upon the party who set up that defense. If the defendant apprehended that the form of the statement·tended to mislead the jury, in that they might not understand that the words "it is the duty of the defendant," &c., merely imposed on him the *onus probandi* on this issue, he should have asked an explanatory instruction.—*Smith v. State*, 86 Ala. 28.

4. The general charge should never be given, when there is any evidence, however weak and inclusive it may be, tending to make a case against the party who asks it. In this case, there was evidence tending directly to show defendant's guilt; and the general charge requested by him was properly refused, notwithstanding the witnesses for the State were self-contradictory in the testimony given by them; and although the presiding judge may have believed that the evidence was not sufficient for conviction. That was a question entirely for the jury.—*Daniel v. Hardwick*, 88 Ala. 557; *Paden v. Bellinger*, 87 Ala. 575; *Beard v. Horton*, 86 Ala. 202.

5. Each of the remaining charges requested by the defendant embodied mere arguments, proper, it may be, to be brought to the attention of the jury by counsel, but not proper to be given in charge by the court. Such charges, as has been many times decided by this court, may always be refused.—*Hawes v. State*, 88 Ala. 29; *Rains v. State, Ib.* 91; *Riley v. State, Ib.* 193; *Carrington v. L. & N. R. R. Co., Ib.* 472; *Little v. State*, at present term.

The judgment of the Circuit Court is affirmed.