(116 So. 903)

**CARR v. STATE.** (7 Div. 356.)

Court of Appeals of Alabama. March 13, 1928.

Rehearing Denied April 3, 1928.

Pruet & Glass, of Ashland, for appellant.

Charlie C. McCall, Atty. Gen., for the State.

Brief did not reach the Reporter.

BRICKEN, P. J. The prosecution in this case was for a violation of the prohibition law by unlawfully having in possession prohibited liquors. It originated in the county court, and, from a judgment of conviction in said court, an appeal was taken to the circuit court.

■ In the circuit court the defendant was tried upon a complaint filed by the solicitor; said complaint charged in similar terms the same offense as that of the original affidavit.

No objection to the affidavit or complaint was made by demurrer or otherwise, and the original affidavit, as well as the complaint, filed by the solicitor, not being void, the defendant's plea of not guilty waived any defect that appeared in either or both of them. In the circuit court the accused was tried by a jury, was again convicted, and from the judgment of conviction pronounced and entered this appeal was taken. The offense charged is susceptible of joint commission by two or more persons.

The undisputed evidence in this case disclosed that the searching officers went to defendant's home about 1 or 2 o'clock in the afternoon on the day in question, and saw the defendant in his yard. The officers called him, and told him they had a search warrant to search his place; that some whisky had been reported to be there, and defendant said, "All right." The officers thereupon went around the house, and went in his dining room, and found 41 quarts of whisky in cartons or cases by the wall on the floor in the dining room. The officer testified:

"The whisky was out in the open. There was not anything on the top of the cartons. It was in the room where they ate."

The evidence also showed, without dispute, that there were three of the officers, and, when the officers entered the dining room of the home of the defendant for the announced purpose of searching for whisky, the defendant mounted a horse nearby and left. Some of the testimony tended to show he left hurriedly, in a gallop. The officers saw him no more on that day. He did not accompany them into his house, and was gone when they came out.

On the trial, the defendant denied all knowledge of the whisky being in his home and all connection therewith. He contended that the whisky belonged to, and was in possession of, one Turie Grizzle, who was living in the house with the defendant at that time, and was in his employ as a farm hand or tenant. The defendant offered much testimony to sustain this contention. In his testimony, however, he admitted that he ate his breakfast and his dinner in the dining room (where the whisky was exposed to open view), but he insisted he did not see the whisky, and did not know it was in his home.

■■ The evidence in this case was in sharp and irreconcilable conflict. The appellant insists here that the court erred in refusing the general affirmative charge to defendant, but there is no merit whatever in this insistence. The tendency of some of the

evidence pointed to the guilt of the defendant; and there were numerous inferences of an incriminating nature for the consideration of the jury, thus rendering inapt the affirmative charge requested, the case presenting a question of fact for the jury. The trial judge properly held that, under this evidence, he was without authority to direct the verdict. "The general charge should never be given when there is any evidence, however weak and inconclusive it may be, tending to make a case against the party who asks it." Pellum's Case, 89 Ala. 28, 32, 8 So. 83, 84.

The corpus delicti in this case was fully proven without dispute or conflict; that is to say, that the evidence on this point showed conclusively that some one was guilty of the crime charged. The defendant insisted that he was not the guilty party, though charged with the offense. He insisted that the said Turie Grizzle was the guilty party. This character of defense is permissible, for it is certainly true that a person accused of crime may show his own innocence by proof of the guilt of another. The bona fides of such a defense are for the jury when there is any evidence tending to connect the defendant with the commission of the crime charged. So, in this case, was the insistence of the defendant to the effect he was in no manner connected with the fully proven crime in this case, and that said crime was committed by another, bona fide and true, or was it but a subterfuge upon the part of the defendant to avoid punishment, as insisted by the state? On this question the jury were properly, ably, and fairly charged by the court as to the law governing the duty devolving upon the jury. In this connection, the jury were authorized to consider the reasonableness and truthfulness of the testimony bearing upon the controlling question. Was it reasonable that a man, visited at his home by several officers, and informed that it had been reported there was whisky on his premises, authorize the officers to go ahead and search, and, while the officers were so engaged in his home, mount upon a horse, and leave and not again return while the officers were at his home? The defendant, in explanation of this, stated he went to have his horse shod. Was that true? There was some evidence, although contradicted by defendant, that, when the defendant rode up to the shop on a horse, after leaving the officers while they were searching his home, he turned his horse over to a boy, and told him to take it and take care of it, and, if he saw his (defendant's) wife, to tell her it might be late that night when he got back, and he (defendant) left, and went up the hill above the shop. It was the duty of the jury to carefully consider the conflicting evidence and arrive at the truth on this point.

There was also evidence, though denied by defendant, that the defendant, about a week before this trial, approached a state witness, and stated that he was in trouble, and that the witness could help him out; that his wife and children needed him at home, and stated to the witness, "If you could not help me in any other way, you could help me by not knowing anything when you get on the stand to testify." It was for the jury to determine the reasonableness and truthfulness of the defendant's statement that he (defendant) ate breakfast, also dinner, in the same dining room where there was fully exposed to view, according to the undisputed testimony, 41 quarts of whisky, and he not see it. As stated, these and other incriminating facts and circumstances, as shown by the record, were for the jury to consider, and, from all the evidence, it was for the jury to determine whether the defense interposed was a subterfuge, or a true defense. The evidence relating to the conflicting statements of the man who claimed the whisky at the trial, Turie Grizzle, was also for the jury. There was evidence of some of the officers tending to show that Grizzle, at the time the whisky was found in defendant's home by them, stated, "He did not know there was any liquor on the place, and the s— of a b— that turned it up had better never let it be known, or never let Wes (defendant) know about it or who it was." All this conclusively develops that jury questions were presented by the conflicting evidence. The weight, probative force, and credibility of the evidence was for the jury.

From what has hereinabove been stated, the refusal of charge 1 was without error.

■ Refused charges A and B are of the same import; and in support of said charges appellant cites the case of Gay v. State, 19 Ala. App. 238, 96 So. 646, which case was prepared, for the court, by the writer of this opinion. In giving the approval of this court to the charge set out in the opinion in the Gay Case, supra, we relied upon the cases of Gilmore v. State, 99 Ala. 154, 13 So. 536, and Ex parte Acree, 63 Ala. 234. In doing so we inadvertently overlooked the later decision of the Supreme Court in the case of Bohlman v. State, 135 Ala. 45, 50, 33 So. 44, where the Gilmore Case on this point was declared and held to be wrong, and in effect held said charge to be argumentative. Without reference to this, however, if no objection could be made to said charges A and B as they here appear, still their refusal by the trial court would not justify this court in predicating reversible error thereon, for the reason it clearly appears that the same rule of law attempted to be stated in said charges was substantially and fairly given to the jury in charges 2, 3, E, F, and G. Given charge E expressly covers these refused charges, and such difference as may appear between charge E and refused charges A and B is highly favorable to defendant. We do not intend to imply, from what we have here said, as giving

our approval to the refused charges as they appear in this record.

We discover no error, of a reversible nature, in any of the rulings of the court presented for our consideration. The record proper is without apparent error. The judgment of conviction appealed from will stand affirmed.

Affirmed.