### MOULTON v. STATE. (4 Div. 863.)*

(Court of Appeals of Alabama. Aug. 28, 1923.
Rehearing Denied Oct. 30, 1923.)

**1. Criminal law &#8455;363, 448(9)—Testimony held admissible as part of res gestæ and not objectionable as opinion of witness.**

In a prosecution for murder, testimony as to the distance defendant 'was from deceased shortly before the homicide *held* so intimately connected in time and place with the fatal difficulty as to constitute a part of the res gestæ, and not objectionable as the opinion' of the witness.

**2. Criminal law &#8455;665(4)—Examination of witness, violating rule of exclusion from courtroom discretionary.**

The examination of a witness who has violated a rule requiring witnesses to leave the courtroom and remain out of hearing of the trial until called is within the discretion of the court.

**3. Criminal law &#8455;1153(5)—Discretion as to examination of witness violating rule not reviewable.**

A ruling of the court below exercising its discretion as to the examination of a witness violating a rule excluding witnesses from the courtroom until called is not reviewable.

**4. Criminal law &#8455;665(4)—Permitting violator of order of exclusion to testify and punishing him for contempt, the better practice.**

When a witness disobeys an order excluding him from the courtroom during the examination of witnesses, the better practice, where there has been no misconduct of the party calling him, is to admit his testimony and punish him for contempt.

**5. Criminal law &#8455;1169(1)—Proof that witness' son married defendant's sister harmless after cross-examination seeking to show bias.**

In a prosecution for murder, after defendant on cross-examination had asked a witness for the state if he had not taken considerable interest in the case against defendants and the witness answered in the negative, proof by the state that the witness' son married the defendant's sister was harmless.

**6. Criminal law &#8455;1163(3)—Failure to move to exclude answer admitted over objection held waiver of error.**

Where no motion is made to rule out the answer, it will be presumed that the party objecting to a question was satisfied with the answer and was not harmed by the action of the court in overruling his objection to the question.

**7. Criminal law &#8455;363—Testimony as to what witness saw with reference to fatal difficulty admissible as part of res gestæ.**

In a prosecution for murder, testimony as to what witness saw with reference to the trouble which resulted in the homicide *held* admissible as a part of the res gestæ.

**8. Criminal law &#8455;683(2)—Acceptance or rejection of competent evidence not strictly in rebuttal discretionary.**

The acceptance or rejection of evidence admissible as a part of the res gestæ, though not strictly in rebuttal, is within the sound discretion of the trial court.

**9. Homicide &#8455;158(3)—Threat not naming deceased held admissible.**

In a prosecution for murder, evidence that accused said on the evening of the difficulty that he was going to kill somebody that day *held* competent under the rule that threats generally not naming deceased may be admissible.

**10. Criminal law &#8455;1170½(2)—Answer to question favorable to defendant held not prejudicial.**

In a prosecution for murder, where deceased was stabbed to death with a knife, the answer in the negative by a witness to a question as to whether he saw accused prior to the homicide whetting his knife was not prejudicial to accused.

**11. Homicide &#8455;338(1)—Testimony that after fatal difficulty deceased's pistol was given defendant held not prejudicial.**

In a prosecution for murder, testimony that after the fatal difficulty the witness saw another give deceased's pistol to defendant *held* not prejudicial to defendant as it tended to show that deceased had a pistol at the time of the difficulty.

**12. Criminal law &#8455;1043(2)—Admission of evidence over general objection not reviewable unless manifestly illegal.**

Under Circuit Court Rule 33 (Code 1907, p. 1527), requiring specific grounds of objection to testimony, the appellate court will not review the admission of evidence not manifestly illegal and irrelevant and incapable of being rendered admissible in connection with other evidence, over a general objection.

**13. Homicide &#8455;169(1), 171(1)—Evidence of matters leading to and explanatory of murder admissible.**

In a prosecution for murder, it is permissible to show all that transpired at the time of the fatal difficulty and everything leading up to and explanatory of the tragedy.

**14. Criminal law &#8455;448(2)—Testimony held not objectionable as opinion evidence.**

Testimony that "by us looking back our mule got out against the fence post," *held* not objectionable as the opinion of the witness; it being a narration of fact.

**15. Homicide &#8455;338(2)—Testimony that witness naturally excited immediately after difficulty not prejudicial.**

In a prosecution for murder, testimony of a witness that he was naturally excited immediately after the difficulty was not prejudicial to defendant.

**16. Criminal law &#8455;364(2)—Testimony that defendant was near deceased shortly prior to homicide admissible as part of res gestæ.**

In a prosecution for murder, evidence that just before deceased left a' church in a buggy

&#8455;For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

*Certiorari denied 210 Ala. 656, 98 South. 715.

closely followed by defendant and others to the place where the killing occurred, defendant was near deceased's buggy, *held* admissible as part of res gestæ.

**17. Homicide ⚷169(2)—Assault on deceased's father just prior to homicide held admissible.**

In a prosecution for murder, it was competent for the state to show as a part of, and leading up to, the fatal difficulty, that defendant shoved deceased's father around in front of a church door, in view of testimony tending to show that the defendant remained about the church door until the deceased came out and then went in pursuit of him.

**18. Criminal law ⚷693—Responsive answer not objectionable where no objection made to question.**

Where no objection to a question is made, an answer responsive to the question is not open to objection.

**19. Criminal law ⚷368(2)—Testimony of witness relating facts just prior to homicide as to what he then did held admissible as part of res gestæ.**

In a prosecution for murder, question by the state of a witness who was relating facts just prior and leading up to the fatal difficulty as to what the witness then did *held* proper as calling for res gestæ evidence.

**20. Homicide ⚷338(2)—Evidence as to nervous condition of witness held not prejudicial.**

In a prosecution for murder, evidence that a witness got so nervous that she could hardly think and tell about the fatal difficulty which she had witnessed *held* not prejudicial.

**21. Criminal law ⚷422(4)—Testimony as to statement by associate of defendant as to where he was going just prior to fatal difficulty held not admissible.**

In a prosecution for murder, testimony that an associate of defendant said he was going to a certain place when he with defendant and another followed deceased to the place of the killing *held* not admissible under the rule permitting contemporaneous declarations of a defendant as tending to show his motive or illustrate his conduct.

**22. Homicide ⚷166(6)—Testimony as to statement of reason for refusal by deceased to marry defendant's sister held inadmissible.**

In a prosecution for murder, evidence as to whether deceased made any statement as to why he refused to marry the sister of defendant *held* inadmissible as irrelevant.

**23. Homicide ⚷166(6)—Testimony that defendant's sister had never had immoral relations with any man other than deceased inadmissible.**

In a prosecution for murder, the refusal of testimony offered to show that the sister of defendant had never had immoral relations with any other man than deceased *held* not erroneous.

**24. Homicide ⚷157(3)—Former difficulty but not particulars admissible to show malice.**

Proof of a former difficulty is admissible on a trial for murder for the purpose of showing malice, but the particulars may not be inquired into.

**25. Homicide ⚷338(1)—Testimony as to statement that defendant was going to have a row held not prejudicial.**

In a prosecution for murder, testimony that the witness could not say that the defendant and his brother had some trouble on the day of the homicide and that some one called to him and said that they were going to have a row *held* not prejudicial to defendant.

**26. Witnesses ⚷254—Question as to statement to counsel admissible in rebuttal to refresh recollection.**

Questions in rebuttal as to what a witness said to counsel at the noon hour *held* admissible for the purpose of refreshing the recollection of the witness.

**27. Criminal law ⚷448(1)—Witness must testify to facts and not to matters of opinion.**

The general rule is that witnesses must testify to facts and are not permitted to express mere matters of opinion.

**28. Criminal law ⚷449(1)—Rule as to admission of testimony where fact cannot be reproduced and made apparent to jury.**

Where a fact cannot be reproduced and made apparent to the jury, a witness may describe the fact according to the effect produced on his mind, or, if from the nature of a particular fact, better evidence is not attainable, the opinion of a witness derived from observation is admissible.

**29. Criminal law ⚷448(7)—Evidence of physical obstructions to view of witnesses held admissible as fact rather than opinion.**

In rebuttal of testimony of witnesses claiming to have seen the fatal difficulty from a certain point, evidence that there was a growth of oak and pine saplings which would obstruct the view and that one at such point could not see the road where the difficulty took place was admissible as an attempt to state a fact rather than the opinion of the witness.

**30. Criminal law ⚷1170½(1)—Admission of evidence of statement of witness held not reversible error.**

The admission of evidence that witness had said he had given two of alleged parties to conspiracy a drink of liquor, though incompetent for the purpose of impeachment, *held* not reversible error.

**31. Witnesses ⚷331½—Evidence that witness appeared to be drinking competent as affecting his ability to remember.**

It is competent for the purpose of showing the condition of a witness at the time of the difficulty concerning which he testified to show that shortly thereafter he appeared to be drinking as affecting his ability to remember distinctly the facts about which he undertook to testify.

Appeal from Circuit Court, Covington County; Arthur B. Foster, Judge.

D. Moulton, alias Dee Moulton, and others were jointly indicted for murder in the first degree. On his separate trial the nam-

⚷For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

ed defendant was convicted of murder in the second degree, and he appeals. Affirmed.

W. W. Sanders, of Elba, for appellant.

The question asking how far behind deceased was defendant following him called for a conclusion of the witness. Veal v. State, ante, p. 168, 95 South. 783. Permitting the witness Conley to testify, after remaining in court in violation of the rule, was error to reverse. 16 C. J. 844. Whether defendant's sister married witness' son was wholly immaterial. Russell v. State, 17 Ala. App. 436, 87 South. 221. Proof that a witness saw defendant's brother give defendant a gun after the difficulty was inadmissible. Madry v. State, 201 Ala. 512, 78 South. 866; Tittle v. State, 15 Ala. App. 306, 73 South. 142. Or of what a witness heard one of defendants say after the difficulty was over. 16 C. J. 1036. Proof of the difficulty between defendant and deceased at the church prior to the fatal difficulty was no part of the main transaction, and was inadmissible. Minor v. State, 15 Ala. App. 556, 74 South. 98. The declaration of Blair upon leaving the church as to where he was going should have been admitted. Harris v. State, 177 Ala. 17, 59 South. 205; Campbell v. State, 133 Ala. 87, 31 South. 802, 91 Am. St. Rep. 17; 16 C. J. 576. Relations between deceased and defendant's sister should have been admitted in evidence on the issue of sanity vel non. Winford v. State, 16 Ala. App. 143, 75 South. 819; Gafford v. State. 125 Ala. 1, 28 South. 406. What state's witness Mitchell said to the solicitor at the noon recess of the court, in the absence of defendant, was hearsay and immaterial. Bice v. Steverson, 205 Ala. 576, 88 South. 753. A witness may not be impeached upon immaterial matters. Russell v. State, 17 Ala. App. 436, 87 South. 221; Bagley v. State, 18 Ala. App. 204, 90 South. 51; Tapscott v. State, 18 Ala. App. 67, 88 South. 376; Cornelius v. State, ante, p. 170, 95 South. 824: West Ry. v. Turrentine, 197 Ala. 603, 73 South. 40; Jones on Evi. 1046.

Harwell G. Davis, Atty. Gen., and Lamar Field, Asst. Atty. Gen., for the State.

It was not error for the court to fine the witness who broke the rule and permit him to testify. Webb v. State, 100 Ala. 47, 14 South. 865. A witness may always testify as to the res gestæ of a case; general objections are not sufficient.

**FOSTER, J.** The indictment charged murder in the first degree. The defendant was convicted of murder in the second degree. Pleas of not guilty and not guilty by reason of insanity were interposed.

On a Sunday in July, 1922, a crowd was assembled at Friendship Church in Covington county for an all day singing. The deceased, Otis Kendrick, his father and family, the defendant, several of his brothers, two brothers-in-law, and others were present.

The evidence on behalf of the state tended to show that the deceased reached the church about 2 o'clock in the afternoon; that, when deceased started up the church steps, the defendant took him by the arm in an angry manner, and the deceased, breaking away, went into the church with a young lady and remained inside until the singing was concluded. During this time the defendant and his brothers-in-law, Levi Maloy and Robert Blair, standing outside several steps from the door of the church, shook their fists and made grimaces at the deceased, and defendant made the threat that he was going to kill somebody that day.

The deceased left the church and with Will Cooper got in a buggy and started along the road to his home. The defendant and Levi Maloy and Robert Blair went hastily to a buggy and hurriedly hitched a mule to it, and drove rapidly up the road the deceased was traveling. Another buggy with brothers of defendant was following immediately behind defendant's buggy. This road did not lead in the direction of their home.

The father of deceased, with some members of his family, drove in an automobile along the same road going to his home. When the defendant overtook deceased, defendant jumped from his buggy, went to the rear of deceased's buggy, cut the deceased in the back of the neck with a knife; a struggle ensued in which deceased was pulled from the buggy and a general fight followed in which defendant, his brothers, his brothers-in-law, on the one side, and deceased and his father, on the other side, engaged. During the fight in the road several of the participants were cut; several shots were fired. There was a wire fence on each side of the road, and the deceased went over the wire fence into a pasture, sat down on a log and reloaded his pistol. Howard Moulton, a brother of defendant, the first to get over the fence while going toward deceased, was shot and killed by deceased, defendant and Blair followed deceased into the pasture and were shot by him. The deceased finally reached his father's car and was carried to the house of a neighbor and later to a hospital. Deceased was cut in the abdomen and several places on the body and died from the wounds about 12 days thereafter.

The defendant insisted that he cut the deceased in defense of his own life; and, upon his plea of not guilty by reason of insanity, introduced evidence that deceased had seduced a sister of defendant, and had afterwards refused to marry her.

There are 43 assignments of error. The excellent briefs of counsel for the defendant and for the state have greatly facilitated

the determination of the questions reserved which appear in a voluminous record.

[1] The court properly overruled the objection of the defendant to the question asked Mrs. Cauley, "How far behind Otis Kendrick was the defendant in the buggy following him? Your best judgment?" The question sought to elicit testimony as to the distance the defendant was from the deceased, as is clearly shown by the answer "about 100 to 150 yards." The testimony was so intimately connected in time and place with the fatal difficulty that it constituted a part of the res gestæ and was admissible. 1 Mayfield's Digest, p. 772, § 1; Nelson v. State, 130 Ala. 83, 30 South. 728; Hall v. State, 130 Ala. 46, 30 South. 422. It was not objectionable as calling for the opinion of the witness.

[2, 3] The court did not err in permitting the state to examine Tom Cauley. The rule was invoked and the witnesses were required to leave the courtroom and remain out of hearing of the trial until called. This witness violated the rule by remaining in the courtroom. Where all witnesses have been ordered under the rule, and one witness remains in court, and listens to the evidence, the court has discretion to allow him to testify or not, and its ruling is not reviewable. Thorn et al. v. Kemp et al., 98 Ala. 417, 13 South. 749.

[4] When a witness disobeys an order excluding him from the courtroom during the examination of witnesses, the better practice, where there has been no misconduct of the party calling him, is to admit his testimony, and punish him for contempt. Bell v. State, 44 Ala. 393. It is discretionary with the trial court to permit a witness placed under the rule, but who violates it, to testify. Sanders v. State, 105 Ala. 8, 16 South. 935; Hall v. State, 137 Ala. 47, 34 South. 680; Wilson v. State, 52 Ala. 299.

[5] The witness for the state, Tom Cauley, was asked by defendant's counsel on cross-examination, if he had not taken considerable interest in this case against these boys, and stated that he had not, but that he was a good friend of them. Proof by the state that the witness' son married the defendant's, Dee Moulton's, sister was harmless.

[6] The record does not show that the witness Smothers answered the question objected to by the defendant's counsel as follows: "He had you to come to the jail to see him, didn't he?" The bill of exceptions shows that after objection was interposed to the question and overruled by the court, "continuing, the witness testified as follows: I have been seeing Dee ever since I have been living over there." It is clear that this answer was not prejudicial to the defendant. No motion was made to exclude it. The defendant may have been satisfied with it. No question is presented for review.

19 ALA.APP.—29

Where no motion was made to rule out the answer, it will be presumed that the party objecting to a question was satisfied with the answer, and was not harmed by the action of the court in overruling his objection to the question. Empire Clothing Co. v. Hammons, 17 Ala. App. 60, 81 South. 838; Hines v. Laurendine, 17 Ala. App. 350, 84 South. 780; Miller v. State, 16 Ala. App. 3, 74 South. 840; Russell v. Bush, 196 Ala. 309. 71 South. 397.

[7] The court did not err in allowing the solicitor to ask the witness Grimes, "What he saw with reference to the trouble?" The question called for part of the res gestæ of the fatal difficulty. There was no motion to exclude the answer, hence no question is presented for review.

[8] It was competent for the state's counsel to ask the witness Grimes if he heard Mr. Robert Blair say anything to Kendrick. Objection was interposed on the ground that it was not in rebuttal to anything brought out on direct examination. It was entirely discretionary with the court to allow the question on redirect examination. The acceptance or rejection of evidence not strictly in rebuttal is within the sound discretion of the trial court. Horton v. Sou. R. R. Co., 161 Ala. 107, 49 South. 423. The testimony was admissible as part of the res gestæ. Jones v. State, 17 Ala. App. 394, 85 South. 830; Walling v. State, 15 Ala. App. 275, 73 South. 216.

[9] It was competent for the state to show by the witness McCord that the defendant said at the church the evening of the difficulty that he was going to kill somebody that day. Threats generally not naming deceased may be admissible. Myers v. State, 62 Ala. 599; Ford v. State, 71 Ala. 385; Jones v. State, 76 Ala. 8.

[10] The defendant cannot complain that state's counsel asked the witness McCord if he didn't see Dee Moulton, down there at the lemonade stand, whet his knife, the witness having answered the question in the negative. The answer was beneficial to the defendant. Pellum v. State, 89 Ala. 28, 8 South. 83.

[11] The court did not err in allowing the state's counsel to ask the witness King if, after he reached the place of the difficulty and after the difficulty was over, he saw Harlan Moulton give the defendant Dee Moulton anything. The witness answered that he saw him give defendant a gun and that it was the deceased's (Kendrick's) pistol. The defendant cannot complain, as this testimony was beneficial to him, as tending to show that deceased had a pistol at the time of the difficulty. Pellum v. State, supra.

[12] A general objection was interposed to the question propounded by the state's counsel to Dunk Graham as follows: "Did you hear any one of the Moultons say anything

as you walked up there?" (to the scene of the difficulty). The evidence was not patently and palpably illegal or irrelevant, and a general objection presents no question for review.

Under circuit court rule 33 (2 Code 1907, p. 1527) requiring specific grounds of objection to testimony, the appellate court will not review the admission of evidence not manifestly illegal and irrelevant, and incapable of being rendered admissible in connection with other evidence. Adams Hardware Co. v. Wimbish, 201 Ala. 547, 78 South. 901; McKinley Music Co. v. Lewis, 17 Ala. App. 370, 84 South. 858.

[13] There was no merit in the objection to the testimony of the witness, Will Cooper, that: "By us looking back, our mule got out against the fence post." The witness continuing to testify said "We got our buggy wheel behind a post, and they were right on us then, and they began to get out of the buggy, and began to come on to Otis, and Dee was the first one that got to him."

It was permissible to show all that transpired at the time of the difficulty and everything leading up to and explanatory of the tragedy. Jones v. State, 17 Ala. App. 394, 85 South. 830; Turner v. State, 17 Ala. App. 514, 85 South. 849.

[14] The testimony was not objectionable as the expression of the opinion of the witness. It was the narration of a fact.

[15] The testimony of the witness Will Cooper that he was "naturally excited" immediately after the difficulty, was not prejudicial to the defendant.

[16] It was competent for the state to show by the witness Goolsby that he saw one of the defendants near the buggy just before the deceased and others rode away in the buggy. The evidence was part of the res gestæ.

In homicide prosecutions it is always permissible to show as part of the res gestæ all that which transpired at the time of the killing and all which occurred prior thereto, leading up to and explanatory of the tragedy. Henderson v. State, 15 Ala. App. 1, 72 South. 590; Jones v. State, supra; Turner v. State, supra.

[17, 18] It was competent for the state to show by J. J. Kendrick, the father of the deceased, that as a part of and leading up to the fatal difficulty, the defendant shoved witness around in front of the church door; the testimony for the state tending to show that the defendant remained about the church door until the deceased came out and then went in pursuit of him. No objection was made to the question. Where no objection to a question to a witness was made, an answer responsive to the question is not open to objection. Mobile, J. & K. C. R. R. Co. v. Odom, 169 Ala. 507, 53 South. 765.

[19] There is no merit in defendant's objection to the question propounded by the state's counsel to J. J. Kendrick, as follows: "What did you do then?" The witness was relating facts just prior to and leading up to the fatal difficulty. The evidence elicited in response to the question was admissible as part of the res gestæ.

[20] There is no merit in the objection to the testimony of Mrs. Kendrick that she got so nervous that she could hardly think and tell about the fatal difficulty which she witnessed. No objection was made to the question, and the evidence was not prejudicial to the defendant.

[21] There was no error in sustaining objection to the question propounded to defendant's witness Jones if he heard Mr. Blair say where he was going. Defendant offered to prove that Blair said he was going to Jack Hudson's, and that Jack Hudson lived in the direction which the road takes on which the difficulty afterward occurred. This does not come within the rule permitting contemporaneous declarations of a defendant setting out on a journey as to the object or purpose of his trip, and as tending to show his motive or illustrate his conduct at the time of the fatal difficulty. Hill v. State, 210 Ala. 221, 97 South. 639.

Furthermore, the evidence showed that the defendant lived in the opposite direction and the evidence offered did not tend in any way to illustrate the conduct of the defendant. Moreover, the defendant had the benefit of this evidence in the testimony of Dallas Donaldson, a witness for defendant.

The answer to the question propounded by the state's counsel to one Jones, a witness for the defendant, as to whether witness was "uneasy about the defendant's mind," was that witness knew his mind was not like it used to be. There was no motion by defendant to exclude the answer and no question is presented for review here.

[22, 23] The question propounded by defendant's counsel to Mrs. Carrie Moulton, mother of defendant, "Did he, Otis Kendrick, make any statement to you as to why he refused to marry Miss Annie?" (the daughter of the witness and the sister of the defendant) was wholly irrelevant to any issue in the case. The testimony offered by the defendant that Miss Annie Moulton had never had sexual relations with any other man than the deceased was irrelevant and immaterial and the court did not err in refusing to permit it.

[24, 25] It was competent for the state on cross-examination to ask Hub Dorsey, a witness for the defendant, if he did not see Dee Moulton and others have a former difficulty with Kendrick, the deceased. Proof of a former difficulty is admissible for the purpose of showing malice, but the particulars may not be inquired into. McAnally v. State, 74 Ala.

9; Gray v. State, 63 Ala. 66. The answer of the witness that he could not say that the Moultons had some trouble that day, and that some one said "come here, Dorsey, they are going to have a row," could not injure the defendant.

[26] The questions propounded by the solicitor to the witness Mitchell on examination in rebuttal as to what Mitchell said to the solicitor at the noon hour about seeing the Burdick boys over there that day were permissible for the purpose of refreshing the recollection of the witness.

[27, 28] Two witnesses for the defendant testified that they saw the difficulty from a certain point in a pasture. One Nelson, a witness for the state in rebuttal, testified that he was familiar with the pasture and that there was a growth of oak and pine saplings, and that any one in that pasture 75 or 80 yards west of where the difficulty occurred could not see the road. Objection was made on the ground that the question called for illegal, irrelevant, immaterial, and incompetent testimony. The answer was the equivalent of saying that the growth of oak and pine saplings was so thick as to obstruct the view of the road. This was an attempt to state a fact rather than an opinion. The general rule is that witnesses must testify to facts and are not permitted to express mere matters of opinion. Where a fact cannot be reproduced and made apparent to the jury a witness may describe the fact according to the effect produced on his mind, or if, from the nature of a particular fact, better evidence is not attainable, the opinion of a witness derived from observation, is admissible. Mayberry v. State, 107 Ala. 64, 18 South. 219.

[29] The witness had stated that there were oaks and pine saplings in the pasture between the point where certain defendant's witnesses had testified they were standing and the place on the road where the difficulty occurred. It was material to show that the growth of pines and oaks was so thick as to obstruct the view of the witnesses, for the purpose of impeaching their evidence. It is difficult to conceive any better way in which this evidential fact could be communicated to the jury than for a witness familiar with the conditions and surroundings to declare that a person standing at the point described by the defendant's witnesses could not look through the growth of pines and oaks to the point on the road where the difficulty occurred. The evidence was admissible.

[30, 31] It was not competent for the purpose of impeachment to show that Hardy Maloy had said he had given two of the alleged conspirators a drink of liquor at the church that day. But this was harmless error and should not work a reversal of the case. Hardy Maloy testified as a witness for the defendant. It was competent for the purpose of showing his condition at the time of the difficulty to show that shortly thereafter he appeared to be drinking as affecting his ability to remember distinctly the facts about which he undertook to testify.

There is no error in the record. The judgment of the circuit court is affirmed.

Affirmed.