288 So.2d 170

**Robert Dennis BROWNING, Junior, alias Bobby Browning**

**v.**

**STATE.**

**7 Div. 215.**

Court of Criminal Appeals of Alabama.

Jan. 2, 1974.

Burns, Carr, Shumaker & Davis, Centre, for appellant.

William J. Baxley, Atty. Gen., for the State.

LEIGH M. CLARK, Supernumerary Circuit Judge.

This is an appeal from a conviction of robbery and a sentence of imprisonment in the penitentiary for a term of fifty years. The judgment was based on a verdict of the jury finding defendant (appellant) guilty and fixing his punishment. His plea was not guilty.

Clarence Chestnut, Jr., testified that defendant and two other men came into the store of C. E. Chestnut & Sons, operated by the witness and his brother, at Gaylesville, Cherokee County, Alabama, and shopped around in the store; that defendant stated he wanted some hoop cheese, which the witness obtained for him; the witness then went to the register and while he was ringing up the groceries he heard the defendant say, "Sack it up. Sack it up."; the defendant had a pistol; the witness put "some 20–Dollar Bills, 10–Dollar bills, 5–Dollar bills, and one–Dollar bills" on the counter and was told to go to the office; defendant still had a gun on the witness at the time and said, "Come on let's go"; the witness gave "him my bills and checks that I kept in there"; the defendant, still pointing the pistol at the witness, herded the witness and others in the stock room; when the witness left the stock room the defendant and the other two men who came in the store with him had gone.

William Commer testified that he was in the store the evening of the robbery; he overheard defendant, whom he identified on the trial, tell Mr. Chestnut to "Sack it up. Sack it up"; that the man " . . . with the gun, Mr. Browning, took myself and Mr. Chestnut and two other fellows to the back in the storage room. . . ." He said that defendant took them in "the cooler and shut the door."

There was considerable testimony as to a confession made by defendant wherein it was testified that defendant said that he, Edward Lee Moss and another man went to Gaylesville, parked outside of Chestnut's Store and went in the building; that defendant further said that he had a gun and that they robbed the cash register and then went back to Chattooga in Georgia.

Evidence on behalf of defendant consisted of the testimony of Edward Lee Moss, who said he took part in the robbery of the

store; that he, one Dub Wilson and "a guy by the name of Sam" robbed the store; defendant did not take part in the robbery; the three named and defendant had been together before the robbery, but the defendant had become so intoxicated that they had left him in an automobile in a "passed out" condition. The witness had previously pleaded guilty to the robbery.

When the case was called for announcements, the defendant requested a continuance. There was considerable discussion among the court, defendant and defendant's counsel as to defendant's request for a continuance. Appearing for him was his appointed counsel, who had been appointed at the arraignment on September 13, 1972, the trial commencing on October 12, 1972. Defendant stated he had not discussed the case with his appointed attorney until a few moments before the request for a continuance. He said he had paid a retainer's fee to another attorney and was advised by the other attorney not to speak with anyone concerning the case. The defendant mentioned a previous conversation that day with the judge. The judge reminded the defendant that the judge had previously tried to contact an attorney in Atlanta, whose name had been given to the judge, that he was unable to locate him, and that thereafter the judge had been apprised by the defendant of defendant's claim that he had a lawyer in Gadsden. The judge further told him that he had talked with the mentioned lawyer in Gadsden who told the judge "that it would be better if you could obtain service of some other" attorney.

Most of the discussion as to the request for continuance was between the defendant and the court, but defendant's counsel did formally request a continuance as follows: "We respectfully ask the Court to continue this case until the next term of Court." The court then stated:

"I appreciate the situation, however it appears from the record that the indictment was returned February 29, 1972, and that the Defendant, of course, has had knowledge of the seriousness of the charge for some time. The Court has previously considered the matter of whether or not a continuance should be granted at this time. The motion of counsel for a continuance is overruled."

Immediately thereafter defendant's counsel moved for a change of venue and in support of his motion offered some evidence. The motion was denied by the court, and apparently no complaint is made on appeal as to such ruling.

It should be said that appointed counsel, with admirable loyalty to defendant, strongly supported defendant in his request for a continuance, but no contention or showing was made that there was not sufficient time for defendant and the appointed attorney to prepare for trial at that term of court. Before defendant's appointed attorney asked for a continuance until the next term of court, the court had indicated that they would proceed with the general qualifications of the jury, and then counsel asked for an opportunity to talk to defendant before "you proceed further in the case.", and the court stated that it would give about fifteen minutes before "we strike the Jury." After recess for fifteen minutes, defendant's attorney stated that he would like to have some more time since he hadn't had ample opportunity to discuss the matter with Mr. Browning, and the court asked if any further motions should be filed in the case. Counsel then replied with the motion to continue the case until the next term of court, which was overruled, and counsel stated that before they went further "the Defendant asked for a change of venue." The court then proceeded to hear evidence on the motion for a change of venue. After the motion for a change in venue was overruled, the jury was qualified and selected, and the trial of the case was commenced without any further request for a delay. No request was ever made for a delay of any specific time, an hour, a day, two days or more in order that defendant and his appointed counsel could more fully discuss the matter. A granting of the motion for a

continuance until the next term of court would have resulted in a continuance of approximately six months. No contention or showing was made that the attendance of any prospective witnesses for defendant could not be obtained for the trial of the case at the then setting.

Firmly rooted and still in vigor in our jurisprudence is the principle that the matter of the continuance of a trial is addressed to the sound discretion of the trial court, and its ruling will not be disturbed unless gross abuse of the court's discretion is shown. Seibold v. State, 287 Ala. 549, 253 So.2d 302; Butler v. State, 285 Ala. 387, 232 So.2d 631, cert. dismissed 406 U.S. 939, 92 S.Ct. 1807, 32 L.Ed.2d 140; Segers v. State, 283 Ala. 694, 220 So.2d 882; Nickerson v. State, 283 Ala. 387, 217 So.2d 536; Gandy v. State, 49 Ala.App. 123, 269 So.2d 141; Payne v. State, 48 Ala.App. 401, 265 So.2d 185, cert. denied 288 Ala. 748, 265 So.2d 192.

■ The record shows that the trial court considered fully, impartially and understandingly everything that was said by defendant and his counsel relative to the request or motion for a continuance. We are convinced that the discretion that has been wisely reposed in the trial court was not abused.

■■ Over the objection of defendant's counsel, the court permitted the State to call Sheriff C. M. Garrett, as a witness and obtain his testimony as to the confession of the defendant. The ground of objection was that Sheriff Garrett had been allowed to remain in the court room during the trial of the case and that the rule had been invoked to the effect that the witnesses were to remain out of the court room while the trial was in progress. The witness' testimony was out of the presence of the jury and was taken in connection with the preliminary inquiry as to whether defendant's Fifth Amendment rights had been violated in the matter of his confession, but whether out of or in the presence of the jury, it is clear that the

rule invoked does not prohibit a trial court, acting within its sound discretion, from permitting a witness to testify, even though the witness has been in the court room throughout the previous part of the trial. Thigpen v. State, 49 Ala.App. 233, 270 So.2d 666; Howton v. State, 43 Ala. App. 10, 178 So.2d 566; Beddow v. State, 39 Ala.App. 29, 96 So.2d 175, cert. denied, 266 Ala. 694, 96 So.2d 178; Moulton v. State, 19 Ala.App. 446, 98 So. 709. It should be noted that there is no contention that there was any impropriety in the witness' not absenting himself from the court room during the previous part of the trial. It is not clear that there was any intention on the part of the State to call him as a witness or any knowledge on his part that he would be called as a witness. Appellant adds a factor to be considered, the charge on appeal, not on the trial, that defendant's constitutional right to a trial by an impartial jury was violated in that, it is now claimed, "It creates a dangerous atmosphere where a prosecuting officer or one who was a key participant in the arrest of the accused, to remain in the court room to be referred to in the testimony and to even give evidence in the cause." Appellant relies upon Turner v. Louisiana, 379 U.S. 466, 85 S.Ct. 546, 13 L.Ed.2d 424, and Chancellor v. State, 291 Ala. 413, 282 So.2d 242. If the facts in this case as to the point were the same as the facts in the cases cited, we would be required to reverse the judgment and remand the case. In *Chancellor* the sheriff of the same county as here (Cherokee), had been allowed to testify over the objection of defendant, and the Supreme Court of Alabama held that the action of the trial court in that respect constituted reversible error. In some other respects the case here bears resemblance to both *Chancellor* and *Turner,* but there are material differences. In *Chancellor* the sheriff had acted as a bailiff attending to the personal needs of the jurors while sequestered. In *Turner* two deputy sheriffs, witnesses against defendant, were in similar "close and continual association with the jurors." The close association of

the witness, or witnesses, with the jury while sequestered was the theme of the grievance in each of those cases. In this case, the record does not indicate that the sheriff acted as custodian of the jury. The record does not indicate that he had any contact whatever with the jury. The jurors were kept together during the trial and at all recesses, including one night and at the noon meal the next day. Upon recessing court the afternoon or evening of the first day, the court stated:

" . . . . After you have been recessed there will be a lady Bailiff to attend upon the ladies of the Jury, and there will be a man Bailiff who will be in attendance of the men. You can give them any messages that you want to send to your people at home, and they will contact those parties. If you have any items of clothing that you want, the Bailiff will be glad to notify your family about those matters. Your wishes will be attended to as carefully as possible. As I said, if we could avoid this we would be happy to do so. You will be taken to your supper at the expense of the County, and you will have comfortable accommodations at one of the motels, and after you have had your breakfast you will come back to court at 9:00 o'clock. Whatever you do while you are outside the court room, do not discuss the case among yourselves, or allow anyone to discuss it in your presence. As you go from the court room remain free from any contact or association with the parties, the witnesses, or Attorneys. I regret that it is necessary that you be kept together, but every effort will be made to make you comfortable, and so at this time court will be in recess until 9:00 o'clock tomorrow morning, and we wish you as good a night as is possible under the circumstances."

This was after the sheriff had testified. At noon the following day the court stated:

"Ladies and Gentlemen of the Jury, it is now close to 12:00 o'clock, and we will grant a recess for lunch. . . In just a few moments the Bailiff will take you in charge and carry you to your meal. You must, of course, remain together in a body Do not contact anyone on the out side. Do not discuss the case among yourselves, or allow anyone to discuss it with you. Go with the Bailiff."

The constitutional right to a trial by an impartial jury was not impaired by the action of the court in allowing Sheriff Garrett to testify under the circumstances stated.

At the conclusion of the State's evidence, counsel for defendant moved to exclude the evidence, which motion was overruled. Then there was a recess. During the recess and out of the presence of the jury, it was made known to the court that defendant desired to make a statement. In the statement and the colloquy that transpired before the jury returned, as shown by approximately six pages of the transcript, it developed that defendant desired to call Edward Lee Moss as a witness, but that his attorney was of the opinion that he should not be called as a witness. The court then extensively inquired of the defendant as to his education, background and general intelligence and ability, and advised the defendant that he should take the advice of his counsel, but defendant persisted in calling the witness Edward Lee Moss. Defendant asked that his appointed counsel be dismissed from his case and that if the case must go on he would ask Mr. Moss to take the stand as a witness. After further discussion the court announced that it would not force the services of the appointed counsel upon defendant but that counsel was to remain available to defendant for counsel or advice. Defendant made no objection to such method of proceeding and made it clear that he desired to proceed by placing Mr. Moss on the stand as his witness, and it was made clear by the colloquy between the court and the defendant that he would be allowed to ask questions of any and all

witnesses from that time on in the case. Before calling witness Moss, defendant recalled and interrogated two witnesses who had previously testified. He then called Mr. Moss, who testified at length that he was one of the robbers, but that defendant did not participate in the robbery, that he was not there on the occasion of the robbery, that he had become intoxicated and had passed out in an automobile at the time the witness and two other men went to the store to rob it. At the conclusion of the evidence and the State's opening argument to the jury, the court inquired of Mr. Browning as to whether he wanted to share the time of the argument with his attorney or wished to make the entire closing argument. He then talked with his attorney and stated, "With your permission, I will share the time." He argued his case for more than an hour, and then his attorney made an argument which was followed by the State's closing argument.

█ In the brief of counsel for appellant the position is taken that "The record further fails to show clearly that the appellant intelligently waived his right to counsel." As commendable as is the loyal effort of counsel for appellant in raising this point, we cannot agree with the contention. Our view is that there was a valid waiver by defendant of his right to counsel. In requesting that his counsel be relieved and that he be allowed to interrogate witnesses, defendant was insistent and persistent. He was fully warned of the consequences. He was strongly advised to take a contrary course. The record here reveals remarkable intelligence and outstanding ability on the part of the defendant. His interrogation of the witnesses demonstrated extraordinary skill.

The difference between defendant and his counsel developed as to a point of trial strategy. The Supreme Court of Alabama in Taylor v. State, 291 Ala. 756, 287 So.2d 901, stated:

" . . . Matters of trial strategy, in the absence of a clear showing of improper or inadequate representation, are generally left to the professional judgment and discretion of defense counsel. . . . "

The trial judge in the case before us did his best to persuade defendant to follow his attorney's advice. The circumstances clearly show that, irrespective of the question of the wisdom of defendant's action, he was thoroughly confident, extraordinarily intelligent, fully informed of the consequences, was influenced solely by his own desire and calculated best judgment, and that his waiver of counsel met all the tests of legality. The consideration given it by the court was plenary and was certainly far beyond the perfunctory performance condemned in McConnell v. United States, 375 F.2d 905 (5th Cir. 1957), cited by appellant.

Finding no prejudicial error in the record, we conclude that the judgment appealed from should be affirmed.

The foregoing opinion was prepared by Honorable LEIGH M. CLARK, Supernumerary Circuit Judge, serving as a Judge of this Court under § 2 of Act No. 288, Acts of Alabama, July 7, 1945, as amended; his opinion is hereby adopted as that of this Court.

The judgment is hereby

Affirmed.

All the judges concur.