A jury found defendant (appellant) guilty of the crime of escape in the first degree as proscribed by Title 13A (the Alabama Criminal Code), § 13A-10-31 (a)(2)(b):
 "(a) A person commits the crime of escape in the first degree if:
". . . . *Page 342 
 "(2) Having been convicted of a felony, he escapes or attempts to escape from custody imposed pursuant to that conviction.
 "(b) Escape in the first degree is a Class B felony."
Soon after the conviction, the court announced that a presentence investigation would be conducted by the probation officer, the State announced that it would proceed against defendant "under the Habitual Offender's Statute under the new Alabama Criminal Code" and, over the objection of defendant as to such proceeding, the court set a sentencing hearing for September 11, 1980, about three weeks after the case was tried. After a hearing on the date set, the court entered an order that notice had been given "in open Court on August 20, 1980, that the State would proceed under Section 13A-5-9 (c)(2) of the Code of 1975 as amended," which provides:
 "In all cases when it is shown that a criminal defendant has been previously convicted of any three felonies and after such conviction has committed another felony, he must be punished as follows:
". . . .
 "On conviction of a Class B felony, he must be punished by life in the penitentiary.
". . . ."
The Court then sentenced defendant to imprisonment for life.
The most troublesome issue presented by appellant relates to the action of the court in overruling appellant's motion for a continuance of the case. The motion was presented when the case was called for trial about 1:50 P.M. on August 20, 1980. Defendant had been indicted on July 10, 1980. As stated in defendant's written motion, the "defendant ha[d] been in continual incarceration since being taken into custody following his arrest for escape, some of which time ha[d] been spent in a hospital." On August 5, 1980, the court entered an order "tentatively" setting the case for trial on "August 18, 1980; if the defendant is recovered sufficiently he will be returned for trial" and on August 11 ordered that the defendant be transported "from Montgomery, Alabama, to the Morgan County Jail pending proceedings against him." On Monday morning, August 18, defendant was brought before the court for an arraignment. His indigency was then determined, and an attorney was appointed for him, the same attorney who represented him throughout the trial and has continued to represent him since. Defendant was arraigned that day, appearing before the court with his attorney, and entered a plea of not guilty.
When the case was reached on the docket and called for announcement as to readiness, the State announced ready. Thereupon the transcript shows:
 "MR. HAMMOND: Your Honor, I intend to file a motion for a continuance in this case. Do you want to take that now?
"THE COURT: Yes.
 "MR. HAMMOND: Judge, the grounds for this motion for a continuance basically relate to the insufficient time I have had to prepare this case. I was appointed by Your Honor, as you know, on Monday morning. The trial is set, of course, for Wednesday afternoon at 1:30. I have had very little time, insufficient time to do the necessary research, to prepare the necessary motions, to interview witnesses, to subpoena witnesses, to prepare adequate written jury charges and to basically prepare this case.
 "THE COURT: Well, if there are any witnesses that you know of, where are they, or do you have any yet?
 "MR. HAMMOND: I don't know of any. I have had a very brief period of time to talk to my client about the case.
 "THE COURT: Well, you know if it were a murder case or if it were a conspiracy case or if it were something like that, I would be more inclined to grant a continuance. I believe he is charged with the unlawful escape from legal custody of an officer, which ordinarily doesn't take a whole lot of investigation. Now, if there is anything special about this case that does make it change that, I would be glad to hear you on it. *Page 343 
 "MR. HAMMOND: Your Honor, there is nothing that is unusual so far as I know about the case. The point is that I have had very little time to discover it is all that I can —
 "THE COURT: I understand that. In view of the fact that this man is up here from the State prison and in view of the fact that you have made — I have been informed that there is a witness here from out of State, is that correct?
"MR. MOEBES: Yes, sir.
 "THE COURT: And who has been here for several days, since Monday?
"MR. MOEBES: Since Sunday.
 "THE COURT: Well, that would not prevail if there was something that I thought might help the situation. I believe I will overrule the motion for a continuance.
 "MR. HAMMOND: We except, Your Honor. I have one further motion I would like to file at this time."
At that time counsel for the parties argued the demurrer to the indictment, which raised a question unrelated to the motion for a continuance.
Promptly after the ruling on the demurrer to the indictment, counsel for the defendant informed the court that he would like to renew his motion for a continuance "and state another ground." This was permitted by the court and the following occurred:
 "MR. HAMMOND: Your Honor, I would like at this time to renew my motion for a continuance based upon the ground that if the defendant is found guilty in this case, there will be a severe sentence imposed under the Habitual Offender Act. In fact, if he is found guilty of this felony offense and has in the past been found guilty of three previous felony offenses, there would be a mandatory life sentence which is one of the most severe sentences imposed by the State of Alabama on criminal defendants. Your Honor, I believe that more than two days preparation for this case is necessary in order to insure that the defendant's Sixth Amendment Right to counsel is —
"THE COURT: What is your —
 "MR. MOEBES: Judge, it was explained by the Court to this attorney that the case will be tried this week when he made a motion for a continuance. He has had two days to get ready for it. It would greatly surprise me if he even placed the witness on the stand. This is an escape case. The entire burden will be on the State, and as far as the matter of the Habitual Offender's Statute, that also is a burden on the State to prove these prior convictions. I don't see that this defendant for defense counsel is in any way prejudiced in proceeding with the trial of this case. As was explained to this attorney Monday, there is a state witness that was flown in here Sunday for the purpose of this trial. He has been here the entire week and we feel that certainly this attorney has had adequate time to properly prepare this man's defense and we would ask to move forward with it.
 "THE COURT: Well, I believe I would overrule the motion to continue it.
"MR. HAMMOND: We except, Your Honor."
That the issue under consideration is worthy of serious consideration is unquestionable. The surface of the motion tends, we think, to lean heavily in favor of appellant. The fact that an attorney was allowed no more than approximately two days to prepare for the defense of a felony would in most cases materially impair the defendant's Sixth Amendment right "to have the assistance of counsel for his defense." In such respect, the denial of the motion for a continuance comes dangerously close to the error that was found to be reversible in Browning v. State, 57 Ala. App. 217, 326 So.2d 778, cert. denied, 295 Ala. 392, 326 So.2d 783 (1976) and error that was held to be reversible in Kearley v. State, 52 Ala. App. 405,293 So.2d 322 (1974). It should be noted that Browning v. State,supra, was an appeal from a judgment in a post-conviction proceeding relative to the conviction which was upheld inBrowning v. State, 51 Ala. App. 632, 288 So.2d 170 (1974). *Page 344 
Although it would have been better, we think, if the trial court had granted defendant's motion for a continuance, we must go further than that to justify a reversal by reason of denial of the motion. Furthermore, we must give to the trial court the presumption in its favor, to which it is entitled in its rulings on motions for a continuance, having in mind that the trial judge is in a better position than we to pass judgment on how much time an attorney needs to give to the preparation of a particular case for trial. We believe that the trial judge weighed that question carefully, and nothing has come to our attention to convince us that defendant's counsel, whether the counsel appointed or not, would have been in any better position than he was at the time of the trial, to afford defendant adequate representation. The case is not likeBrowning v. State, supra, in which there were allegedly alibi witnesses in Georgia and in which due to the speed of the proceedings there was a conflict between defendant and his counsel as to the advisability of the use of a codefendant as a witness for the defendant and an "estrangement between defendant and his counsel during the rest of the trial." Nor is the case like Kearley v. State, supra, in which counsel for defendant made it known to the court that there were material witnesses for defendant that were not present in court and that counsel had not had an opportunity to have subpoenas issued and served on them or otherwise to have them available for the trial.
The scene of the crime in the instant case was within walking distance of the courtroom where the case was tried, which made it readily available to counsel and doubtless to a consideration of counsel while accompanied by his client. Counsel for defendant demonstrated his familiarity with the scene in the jail by making a drawing thereof he used in interrogating Sheriff Van Ward as a witness called by defendant and who had previously testified in the case on call of the State. The only other witness who testified as to the facts regarding the alleged escape was Mr. Edmond Freeman, who was acting at the time as a jailer and who, according to his testimony, while aided by a trusty in moving some prisoners from one of the cell blocks into their proper cells, was "rushed and overpowered by Mr. Murphy" and three other inmates. Mr. Freeman further testified that some, if not all of the four men used knives in subduing Mr. Freeman and the trusty and tied them to a handrail before leaving the jail. What happened to the other three escapees is not revealed by the evidence, but, according to the testimony of Sheriff Van Ward, defendant was located about a month after the escape, was then arrested and returned to the Morgan County Jail.
The only other witness in the case was Morgan County Circuit Court Clerk Cleo Teague, who testified as a predicate to introduction of certified copies of two previous convictions in that court, one for robbery and the other for the "unlawful possession of flurazepam" as alleged in the first and second counts of the indictment respectively.
It appears that probably the witness "from out of the State," who had been in Decatur for three or four days before the trial commenced was witness Edmond Freeman, although this is not conclusively true. It is clear that Mr. Freeman knew more about the facts of the escape than any witness other than the four escapees, including the defendant, and the unnamed trusty who was working with Mr. Freeman at the time. If there had been any inkling of a likelihood that any one of them would have been a witness favorable to defendant, we believe the trial court would have given that fact due consideration and would have permitted defendant's counsel ample time and opportunity to have such witness in court to testify on behalf of defendant.
In the renewal of defendant's motion for a continuance, counsel brought to the attention of the trial court that the State planned, if there was a conviction, to proceed against him under the Alabama Habitual Felony Offenders Act and argued therefrom that the case was for that reason graver than otherwise. Certainly the argument is correct, but the need for more time *Page 345 
would have been chiefly as to the proceeding under the habitual offender law, as to which it developed that defendant was given ample time, which does not appear to be now controverted, in that the sentencing hearing, including the proceeding under the habitual offender law, was deferred for twenty days, until September 11, 1980, and there was no request for any postponement of that hearing.
We think it should be noted also that in defendant's motion for a new trial, a ground was included based on the court's refusal to grant defendant's motion for a continuance but that no evidence was offered and no showing of any kind was made to the effect that matters occurred, between the commencement of the trial and the submission of the motion for a new trial, that tended to show that defendant and his attorney would have been better prepared to try the case if they had been given more time to prepare for the trial. We have no doubt that defendant's counsel did what he could during the time the motion for a new trial was pending to discover any matter of fact that would have been helpful to defendant and that if such had been discovered it would have been presented to the court on the hearing of the motion for a new trial.
Some intimation in the transcript and in appellant's brief as to the lack of experience of defendant's counsel fails to impress us. We note that all he said and did, orally and in writing, from the time of his appointment until the present, bear the mark of commendable legal ability, irrespective of any relatively brief experience.
It is to be seen that the trial court had the opportunity to view the motion for a continuance both prospectively and retrospectively, once before the trial commenced and again on the motion for a new trial. With due regard for the discretion vested in the trial court as to its ruling on a motion for a continuance and to its ruling on a motion for a new trial, we are unable to conclude that such discretion was abused. What the trial court knew at the time of the hearing of the motion for a new trial tended to confirm what it knew and foresaw in ruling on the motion for a continuance. We find no error prejudicial to defendant in overruling defendant's motion for a continuance.
During the process of selecting the jury, including the voir dire interrogation of the prospective jurors, to try the case, a question was asked the panel by defendant's counsel as to their feeling relative to whether a defendant should be convicted of a "lesser included offense" on the one hand or of the greatest offense charged on the other. A hearing was then conducted out of the presence of the jury in which it was noted that Count III of a three-count indictment charged an offense which did not constitute an escape in the first degree, as it was alleged to have been in the count. After some discussion, the State moved to strike "Count Three" and the court entered an order striking it from the indictment. Appellant urges that "An indictment may not be amended without the consent of the defendant entered of record. Ala. Code § 15-8-90 (1975)." He is correct, but Chief Justice Stone said in Salm v. State, 89 Ala. 56,8 So. 66 (1889):
 "The record recites that the prosecuting attorney was allowed to amend the indictment in this case, by striking out the second count. Technically, this ruling was wrong. It was competent for the solicitor, with permission of the court, to enter a nolle prosequi as to one or more of the counts; and the ruling made accomplished the same result. We will treat the ruling as a nol-pros, and, so treating it, we find no error in this ruling."
Accordingly, we find none in the instance under consideration. See also, Jackson v. State, 21 Ala. App. 284, 107 So. 725
(1926).
Connected with the issue just discussed, is a separate issue presented by appellant, as it was presented on the trial, to the effect that escape in the second degree inhibited by Code13A-10-32 "If he escapes or attempts to escape from a penal facility." is a lesser included offense of escape in the first degree, and that the court *Page 346 
erred in refusing to allow defendant to argue to the jury that it should consider the question of defendant's guilt of the lesser included offense and that the court erred in refusing charges requested by defendant permitting the jury to find defendant guilty of a lesser included offense.
In support of his contention that the court was in error in refusing requested written charges of defendant to the effect that the jury could find defendant guilty of an escape in the second degree as defined in § 13A-10-32, a Class C felony, and in not permitting defendant's attorney to so argue to the jury, appellant states in his brief:
 "No matter how slight the evidence, a defendant is entitled to have a correct statement of law given to the jury relative to lesser offenses included in the indictment if there is any reasonable theory from the evidence that would support a conviction of a lesser included offense. E.g., Weldon v. State, 58 Ala. App. 477, 280 So.2d 183 (1973)."
We do not question the correctness of the statement which finds support in the authority cited, as well as other authorities. However, we find that there is no "reasonable theory from the evidence that would support a conviction" of the claimed lessor included offense of escape in the second degree, a Class C felony. The evidence was undisputed and conclusive, as herein above indicated, that at the time of the escape defendant was in custody imposed pursuant to his previous conviction of a felony (two convictions in fact), which is an essential element of § 13A-10-31 but not an element of § 13A-10-32. Without attempting to decide the more ramified question whether the latter is a lesser included offense, of the former, defendant could not, under the undisputed evidence, have been guilty of a lesser offense without also having been guilty of the crime expressly charged. It follows that the court was not in error in ruling as it did on the subject.
On the sentencing hearing, the evidence included a certified copy of the record of a felony conviction of Rickey (or Ricky) Ralph Murphy in the Circuit Court of Lauderdale County, Alabama, in each of at least four cases, which convictions occurred prior to the time of the alleged crime in the instant case. The identity of the name raised a prima facie presumption of the sameness of the person. There was no attempt to rebut that presumption. Appellant's contention that the evidence was not sufficient to show that defendant had been previously convicted of three felonies cannot be sustained. McCord v.State, Ala.Cr.App., 373 So.2d 1242, 1244 (1979); Williams v.State, Ala.Cr.App., 364 So.2d 717 (1978). A careful reading of what was held in Napier v. State, Ala.Cr.App., 344 So.2d 1235, cert. denied, Ala., 344 So.2d 1239 (1977), relied upon by appellant discloses that it does not hold otherwise.
Appellant asserts that the Alabama Habitual Felony Offenders Act is unconstitutional, that it denies "equal protection of the laws in violation of the Fourteenth Amendment and permits cruel and unusual punishment in violation of the Eighth Amendment to the Constitution of the United States." The first contention, as well as other contentions that the Act is unconstitutional, was thoroughly considered and rejected inWatson v. State, Ala.Cr.App., 392 So.2d 1274, cert. denied,392 So.2d 1280 (1981). The question as to any violation of the cruel and unusual punishment provision of the Eighth Amendment was also considered, and it was held therein that as to the sentence in the case there was no violation of the principle. The sentence in the instant case is more severe than the sentence in Watson, but it is the same sentence, a mandatory life sentence, as the sentence imposed on Rummel that was upheld in Rummel v. Estelle, 445 U.S. 263, 100 S.Ct. 1133,63 L.Ed.2d 382 (1980), as to which it is stated in Watson v.State, supra, at 392 So.2d 1277:
 ". . . The Supreme Court, in reviewing the Rummel v. Estelle, supra, case, held that the mandatory life sentence imposed on Rummel did not constitute cruel and unusual punishment under the Eighth and Fourteenth Amendments. . . ."
We come to the same conclusion here.
As a final contention, appellant says that the Act "is void because it is vague and *Page 347 
indefinite concerning the punishment to be inflicted." On the contrary, it is clear and definite as to the punishment in this case in providing, in § 13A-5-9, as amended:
". . . .
 "(c) In all cases when it is shown that a criminal defendant had been previously convicted of any three felonies and after such convictions has committed another felony, he must be punished as follows:
". . . .
 "(2) On conviction of a Class B felony, he must be punished for life in the penitentiary;
". . . ."
We have searched the record for error prejudicial to defendant and have found none. The judgment of the trial court should be affirmed.
The foregoing opinion was prepared by Retired Circuit Judge Leigh M. Clark, serving as a judge of this Court under the provisions of § 6.10 of the Judicial Article (Constitutional Amendment No. 328); his opinion is hereby adopted as that of the Court. The judgment of the trial court his hereby
AFFIRMED.
All the Judges concur.