LEIGH M. CLARK, Retired Circuit Judge.
This is a consolidated appeal from judgments of conviction and sentence in Circuit Court cases numbered 82-837 and 82-838. In one of the cases, this appellant as the sole defendant was charged in a two-count indictment with theft of property in the first degree in one count and receiving stolen property in the first degree in the second count. In the other case, he was charged with theft of property in the second degree in one count and receiving stolen property in the other count. The cases were consolidated for trial, and the jury found defendant guilty of theft of property in the first degree in one of the cases and theft of property in the second degree in the other case. After adjudging defendant guilty in accordance with the verdicts of the jury, the trial court at a duly scheduled sentencing hearing and after defendant had been duly notified that the State would proceed against him under the Habitual Felony Offenders Act, fixed his punishment and sentenced him to imprisonment for life in each case with the sentences to run consecutively, it being convinced at the sentencing hearing that he had been previously convicted of five felonies.
I.
' The first issue presented in brief of counsel for appellant is thus captioned:
“DID THE TRIAL COURT ERR IN OVERRULING DEFENDANT’S MOTION TO EXCLUDE THE STATE’S EVIDENCE WHERE THE ONLY INCUL-PATORY EVIDENCE WAS THE UNCORROBORATED TESTIMONY OF AN ACCOMPLICE AND THE EVIDENCE WAS INSUFFICIENT TO SUPPORT THE VERDICTS OF THEFT I AND THEFT II?”
Appellant’s attorney would be standing on solid rock in taking the position he does in his first issue as captioned above if his assumption were correct that the only in-culpatory evidence against defendant was the uncorroborated testimony of an accomplice, for, as provided by Code of Alabama, § 12-21-222:
“A conviction of felony cannot be had on the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the commission of the offense, and such corroborative evidence, if it merely shows the commission of the offense or the circumstances thereof, is not sufficient.”
Appellant’s attorney is correct in categorizing one of the eyewitnesses to the crime of theft charged in each of the cases as an accomplice to whom Code of Alabama, 1975, § 12-21-222 is applicable. The particular witness was twenty-six year old Alton W. Brasher. He testified on call of the State that he had pleaded guilty and been convicted of the theft of each of the outboard motors made the basis of the two cases against Herbert George Weaver now under consideration on appeal. Mr. Brasher testified that he had known the appellant “A couple or three years,” and lived “about a mile or so” from him. We quote the following from his testimony on direct examination:
“Q. Now, during the month of September did you have an occasion to go out to the Bucksville area to a house that had a boat behind the house?
“A. Yeah, I went out there and got it.
“Q. And who drove you out there? Whose car, whose vehicle did you go out there with?
“A. My wife.
“Q. The first time?
“A. Uh-huh (yes).
“Q. And who was with you?
“A. Me and my wife.
*1126 “Q. And who else?
“A. Hub.
“Q. When you say Hub, who do you mean?
“A. Herbert.
“Q. Herbert who?
“A. Weaver.
“Q. The person you identified as the defendant?
“A. Yeah.
“Q. At that time was he in a cast? Around that time he ended up in a body cast and on crutches, didn’t he?
“A. He was in a cast.

“Q. Now, after you got out near this house, what did you do?
“A. Got out and took the boat off, the motor off the boat.
“Q. Now, how did you do that? Describe to the jury how you went and did that?
“A. Wire cutters.
“Q. Were there any cables to this motor?
“A. I cut the cables with the wire cutter.
“Q. Now, do you recall this was a, do you recall two motors, is that right?
“A. What?
“Q. Do you recall stealing two outboard motors?
“A. Right.
“Q. This was the bigger of the two, is that right?
“A. Yeah.

“Q. So, it was probably your wife driving?
“A. I reckon so. He [Mr. Weaver] was on crutches and had a cast on, I think.
“Q. So, that time he was on crutches maybe. Now, what did you do after you cut the cable and took the motor off the boat?
“A. Dragged it though the field over there.
“Q. Did anybody help you drag it through the field?
“A. My wife did.
“Q. Now, Hub, the defendant, wasn’t able to help you at that time, was he?
“A. No.
“Q. Now, after you drug this motor up to the car, what did you do with it?
“A. Put it in the back seat.
“Q. And then what did you do with it? Where did you go?
“A. To Willie White.
“Q. Had you ever met Mr. White before that night?
“A. I had seen him a few times, but I didn't really know him that well.
“Q. You didn’t know how to get out to his house, did you?
“A. No, sir.
“Q. How did you get the directions out to his house?
“A. Hub showed me.
“Q. When you say Hub, you are talking about? Speak up.
“A. Mr. Weaver.”
Inasmuch as counsel for appellant does not contend that the testimony of Alton Brasher does not furnish substantial evidence of defendant’s guilt of theft of the two outboard motors, we feel that it is unnecessary for us to narrate further the testimony of Alton Brasher. We turn now to a discussion of the testimony of State’s witness Willie White, which counsel for appellee argues was sufficient to constitute the corroborative evidence required by Code § 12-21-222. Mr. White was the first witness called by the State on the trial of the two cases, which commenced on April 15, 1983. He testified that on two separate occasions, one soon after the other, he bought the two outboard motors involved, “One at a time,” from Mr. Weaver “and a person named Mr. Brasher,” and that “A month or two at least” thereafter he talked with the police officers and gave them “those motors back.” He said that “prior to buying those motors” he had “told Mr. Weaver to let him know if he ran across somebody that has got a good motor reasonable.” We quote from his testimony on direct examination as follows:
*1127 “Q. Now, I will call your attention to the night that you bought the first motor from Mr. Weaver. Now, do you recall what time of night you first saw Mr. Weaver and the other people who were there?
“A. Maybe some time before midnight, I think.
“Q. Was it early in the evening or late in the evening?
“A. It was after dark.
“Q. About how long after dark? Do you have any independent recollection?
“A. I think it was before I went to bed.
“Q. Now, how did Mr. Weaver, the first motor that he sold you, how did they arrive?
“A. I believe in a pickup truck.
“Q. Whose pickup truck was that?
“A. I presumed it was Mr. Weaver’s at that time.
“Q. Had you seen him driving around in that truck before?
“A. I believe it was the same truck.

“Q. Now, at that time you knew Mr. Weaver well and he was your friend, and you have been fishing with him since, is that correct?
“A. Yes.
“Q. But did you know Mr. Brasher very well?
“A. No.

“Q. Now, who came up and talked to you?
“A. Mr. Weaver to start with.
“Q. Herbert Weaver?
“A. Yeah.
“Q. And what did he tell you at that time?
“A. He called me out and asked me did I want to buy a motor.
“Q. Did he set a price for you?
“A. Not really.
“Q. And what did you tell him?
“A. Well, that is when the other fellow got out and we talked.

“Q. Who are you talking about? Who all was out there talking?
“A. Well, all of us was out there, Mr. Brasher.
“Q. Now, Mr. Weaver didn’t just sit there quiet, did he?
“A. He come out and introduced me to Mr. Brasher.

“Q. Then what happened next, sir?
“A. We talked about what they wanted for it.
“Q. You say they talked about what they wanted for it. After you talked about what they wanted for it, what happened next, sir?
“A. I paid Mr. Brasher.
“Q. Okay. Now, how did you pay Mr. Brasher on that occasion?
“A. Let me see. I think that was one I paid him cash for, I believe.
“Q. Now, do you recall which motor was first sold to you? Was it the bigger or smaller motor?
“A. The big one.”
The long direct examination of the witness continued as to the occasion when the witness said he bought the first outboard motor and into the occasion when he said he bought the second outboard motor. He said that, prior to the second occasion, he had told Mr. Weaver that the first motor was “a little bit big for my boat” and said to him “if you run across another one maybe smaller — .” Before ending his quoted statement, the direct examination of him continued as follows:
“Q. Now, after you told them that, did Henry and Mr. Brasher eventually come back to your house?
“A. Yeah.
“Q. And do you know the exact date they came back to your house?
“A. No.
“Q. Do you recall what type of car they were in?
“A. White Trans Am.

“Q. Now, did they sell you anything at that time?
*1128 “A. Yes.
“Q. What was it they sold you at that time?
“A. 50 horse Mercury.

“Q. Now, after they brought this motor by your house, who came out and talked to you first, the 50 horsepower motor?
“A. I walked out like I always do and started talking to them.
“Q. You started talking to Mr. Weaver first, didn’t you?
“A. I don’t recall whether it was Mr. Weaver or Mr. Brasher.
“Q. Did both Mr. Weaver and Mr. Brasher participate in the conversation?
“A. They were all there. We were talking. I can’t remember.
“Q. Now, do you recall writing a check for this motor?
“A. Yes.
“Q. How much was that check for?
“A. $250.00.
“Q. And did you sign that check?
“A. Yes, sir.”
We think we have quoted enough of the testimony of Mr. White to show that he was not certain as to many of the details as to what occurred when he bought each of the two motors. We agree with appellant’s attorney, however, the same attorney who well represented defendant on the trial of the case, that most of the transaction between White as the purchaser and the seller or sellers to him of each motor was between White and Brasher and that such testimony does not furnish strong support for any contention that Mr. Weaver received any of the money paid by Mr. White to Mr. Brasher for either of the motors. Nevertheless, we do not agree with counsel for appellant in any contention by him to the effect that Mr. White’s testimony does not furnish sufficient corroborative evidence of the testimony of Mr. Brasher that Mr. Weaver was a participant in Mr. Brasher’s theft of the motors. On the trial of the case, defendant’s attorney did a splendid service in his cross-examination of Mr. White in clarifying what occurred on each of the occasions on which Mr. White purchased one of the motors. In doing so, he commendably seemed to insist, as he does now, that Mr. White was not a participant in or an accomplice of anyone participating in the theft of either of the motors, although Mr. White testified that soon after the purchase by him of one of the motors, he “realized they could have been stolen” and that he felt that he had done wrong in purchasing them.
Although Mr. White’s testimony is fraught with ambiguity and uncertainty in many respects, he was not an accomplice to the theft of either of the motors. In our opinion, his testimony constitutes corroborative evidence “tending to connect” defendant with the commission of the theft of each of the outboard motors. As his testimony does not merely show the commission of either of said thefts, we find that his testimony fully meets the requirements of Code of Alabama, § 12-21-222.
II.
By appellant’s next contention for a reversal, it is stated in the brief of his counsel, “The trial court erred to reversal by sentencing appellant as an habitual offender when the State failed to prove prior convictions.” In order for the sentence in each of the cases now on appeal to have been permissible, the State would have had to have shown only three previous felony convictions. Ala. Criminal Code, § 13A-5-9(c)(1), (2). The State proved five previous felony convictions, four of which (for kidnapping, assault with intent to rob, burglary in the first degree and escape) had been convictions in the Circuit Court of Tuscaloosa County, and the fifth was for larceny from a person, in the Jefferson County Circuit Court, Bessemer Division. A certified copy of the judgment of conviction and sentence in each of the previous felony convictions discloses the name of the defendant as either Herbert Weaver or Herbert Weaver, alias Herbert George Weaver. He is named in the instant case as Herbert George Weaver, alias George Herbert Weaver, alias, Herbert Weaver. In the brief of counsel for the appellant as to this *1129 particular issue now under consideration, he states:
“Herein, Appellant denied the prior convictions, and the State failed to prove that he in fact was the same person. The State relies on the presumption of sameness as set out in the case law. Carter v. State, 420 So.2d 292 (Ala.Cr.App.1982); Murphy v. State, 399 So.2d 340 (Ala.Cr.App.1981); McCoy [McCord] v. State, 373 So.2d 1942 [1242] (Ala.Cr.App.1979). In those cases there was evidence in the record as to the identical name, race, sex, birth date, and address. “The present case is distinguishable from those cases. In the present case; some of the exhibits do not contain information for comparison, there is none [sic] variations; the address is different from appellant’s Address, and the Age is different. The clear and affirmative evidence appearing in the record reveals that Appellant is two (2) years older than the person with those prior convictions. “Referring to State’s Exhibit numbers One (1), Four (4), Seven (7), and Ten (10), which follow page 230 of the record, the age revealed is as follows.
“SCExh. No. 1-W/M 23 (1963)
“St.Exh. No. 4-W/M 27 (1967)
“St.Exh. No. 7-W/M 27 (1967)
“St.Exh. No. 10-W/M 29 (1969)
“Therefore, the person with those four convictions was born in the year 1940. Appellant’s birth date is April 26, 1938 (R. 245; 255; 257; 258). This evidence rebuts the presumption and requires that the State satisfy their burden of proof.”
Appellant’s attorney has failed to convince us by anything stated in his brief that the trial court was in error in adjudging at the sentencing hearing that defendant was a habitual felony offender to the extent of having been previously convicted of five felonies. However, there is found in the court reporter’s transcript, argument on behalf of defendant’s attorney, the same attorney that represents him on appeal, that deserves further consideration by us, which we postpone until after we have considered all of the other issues presented in appellant’s brief.
III.
Appellant takes the position that the imposition of two consecutive terms of life imprisonment is unconstitutionally harsh punishment in contravention of the inhibition of “cruel and unusual punishments” of the Eighth Amendment to the Constitution of the United States. In the argument of appellant’s counsel as to this contention, he ignores the fact that the trial court treated defendant as a recidivist pursuant to the Habitual Felony Offenders Act, although appellant’s counsel cites Solem v. Helm, 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983), in which the question as to the constitutionality of a State recidivist statute was involved. We are of the opinion that neither Solem v. Helm, nor any other authority, supports appellant as to his contention that the punishment imposed by the trial court constitutes cruel and unusual punishment if appellant-defendant had been previously convicted of the felonies that form the basis for the judgment of the trial court in fixing defendant’s punishment. As indicated above, we will revert to that question in the final part of this opinion.
IV.
Appellant’s counsel captions the fourth issue presented in his brief as follows:
“THE TRIAL COURT ERRED TO REVERSAL BY ORDERING, ON THE DAY OF TRIAL, THAT THE TWO SEPARATE CASES BE CONSOLIDATED.”
Prior to the commencement of the trial of the cases now under consideration, which had last been set for trial on April 18,1983, and while the parties and their attorneys were responding to inquiries from the trial judge as to their readiness for trial, the question arose as to whether the two cases against this appellant would be tried separately or, on the other hand, they would be consolidated for trial. It appears from the material before us, including copies of the *1130 then recently published dockets of the Circuit Court of Tuscaloosa County, that these cases had been previously set for trial for the week commencing Monday, April 4, 1983, which published docket contained as the eighth statement under the heading “ATTORNEYS, PLEASE NOTE THE FOLLOWING:
“ALL CASES INVOLVING A DEFENDANT WITH MULTIPLE CHARGES WILL BE CONSOLIDATED FOR TRIAL. ANY MOTIONS TO SEVER THE CASES MUST BE FILED BY MARCH 27, 1983, WITH JUDGE KARRH.”
The two cases now before us on appeal were the forty-fourth and the forty-fifth cases on the docket for the week and were set for trial on April 5, 1983. During the colloquy among the trial judge, an attorney for the State and the trial attorney for defendant, as to whether the cases would be consolidated for trial, the following occurred:
“THE COURT: On the April 5 case docket the cases were consolidated. The cases were continued at the request of the defendant from that time. Is that correct?
“MR. TERRY [Defendant’s attorney]: No, sir, I disagree flatly with Your Hon- or. The case was not reached. We tried another case on Thursday and Friday of that week.
“THE COURT: Anyway, it was on that docket and consolidated for trial, so I will allow consolidation on these cases. I don’t see where there would be any injustice or unfairness. Okay. Anything else?
“MR. TERRY: So, the Court is ruling the cases will be consolidated?
“THE COURT: Yes, for trial."
We are of the opinion that the trial court was not in error in ordering the consolidation of the two cases, for the reason that no motion to sever the cases had been filed by March 27, 1983, as required by statement No. 8 of the published docket.
V.
The fifth issue presented in brief of counsel for appellant is thus captioned:
“THE TRIAL COURT ABUSED ITS DISCRETION IN DENYING DEFENDANT'S MOTION FOR A CONTINUANCE.”
The first part of the court reporter’s transcript of the proceeding is as follows:
“THE COURT: Mr. Weaver, I understand you are asking the Court for a continuance on your cases?
“MR. WEAVER: Yes, sir.
“THE COURT: It is now 8:40 on the day of the trial, and the case having been set four prior times, I would hate to see it stalled. It has been on three dockets. It has been set three times for trial, and to come up here at twenty minutes until nine and ask for a continuance in this case, and you have had a lawyer for six months, the same attorney, you are not satisfied with your attorney, are you?
“MR. WEAVER: No, sir.
“THE COURT: You are satisfied with your lawyer, is that right?
“MR. WEAVER: I would like to have another lawyer that I can afford.
“THE COURT: You are satisfied with your attorney you have, your attorney is here ready for trial and the State has announced ready for trial, and I feel like twenty minutes before trial time to ask for a continuance after the case has been set on three trial dockets is a little too much. Do you have anything you want to say?
“MR. LEMLEY [Attorney for the State]: No, sir.”
According to the next four or five pages of the transcript, remarks were made by the defendant personally and by his attorney in support of the motion for a continuance, to which the transcript indicates the trial judge listened but did not change his indicated ruling. The end of the discussion as to the motion for a continuance is in the following language:
“MR. TERRY: Your Honor, in regard to the Court’s ruling about that the Court was not going to grant Mr. Weaver a *1131 continuance and allow him to retain an attorney, he indicated to me he would just like to make a couple of additional remarks about that before we begin the trial this morning.
“THE COURT: Okay. Go right ahead, Mr. Weaver.
“MR. WEAVER: I feel like it is not fair because if it was a delay on ya’ll’s cases, I wouldn’t ask it to be put off. Naturally you would go ahead.
“THE COURT: Do you have anything else you want to say?
“MR. WEAVER: No, sir.”
We do not find an abuse of the trial court’s discretion in its ruling denying defendant’s motion for a continuance. Our duty, therefore, is to follow the well established principle that a trial court should not be reversed for its denial of a motion for a continuance in the absence of its clear abuse of the discretion vested in it as to such a motion. Billingsley v. State, 437 So.2d 601, 605, (Ala.Cr.App.1983), cert. denied, 104 S.Ct. 1276, 79 L.Ed.2d 281 (1984).
After having expressed our views fully as to all the issues presented in brief of counsel for appellant except his Issue II, which challenges the trial court’s treatment of defendant as a habitual offender on the ground that the State failed to prove that the defendant (appellant) herein was the same person as the Herbert Weaver who had been previously convicted of five felonies, we now resume, as we indicated herein we would do, our discussion of that particular issue.
The court reporter’s transcript of the proceedings discloses that during the sentencing hearing or hearings, in which defendant’s attorney challenged by various grounds the treatment of defendant as a habitual felony offender, said attorney for defendant made the following comments, inter alia:
“Back when the sentencing hearing was first set, I referred to the phone directory by way of some statistics for the court. There is fifty families in the Tuscaloosa County community listed in the phone directory with the last name Weaver. There is two hundred and eighteen families with the last name Weaver listed in the phone numbers in Jefferson County, and I would think it would be safe to say there are a good number listed in the Bibb County phone directory. In addition, there is one, at least one specific person with the name George H. Weaver at a Birmingham address. As the court is aware, Mr. Weaver sitting here to my right does live in Jefferson County. The person that was convicted in Four of the five cases offered by the State were here in Tuscaloosa County, and the court has been given at least fifty other families that could have applied to here in Tuscaloosa County. I think the State would have the burden of at least putting on a witness or more to substantiate or show to the Court that Mr. Weaver sitting here at the defense table today is in fact the same as any of those persons who were previously convicted in the five cases offered by the State. The State, having failed to do that, I would ask the Court to rule that it’s not been shown that this Mr. Weaver has any prior felony convictions and that, therefore, the court is due to sentence him as a non-habitual offender and sentence him within the range of one year to ten in one case, and two years to twenty on the other case.”
When that which we have quoted from the argument of defendant’s counsel is considered in connection with the State’s exhibits purporting to show certified copies of the mentioned previous convictions of Herbert Weaver, we are puzzled by the failure of what is now in the transcript as to the sentencing hearing to show with absolute certainty whether defendant was the defendant in the five previous cases of conviction of a defendant by the same, or substantially the same, name as this appellant. Without any prejudgment on our part as to that question, we think that either the State or the defendant, by some witness other than himself, could readily show a correct answer to that question. We note from some of the exhibits as to the previous cases that some of the personnel en *1132 gaged in the cases, either as attorneys or otherwise, are still alive, active and prominent. No doubt should exist as to whether this appellant was the defendant who had been convicted in each of the five cases, which the transcript shows was based on an indictment for a felony by Herbert Weaver. In stating that there should be no doubt as to each of said cases, we have in mind that if it is shown as to three of the cases, it will be sufficient to permit application of the Habitual Felony Offenders Act. However, it would not have necessarily been sufficient to have caused the trial judge to fix defendant’s punishment in each of the cases as he did if this appellant was not the defendant in each of the five previous cases against Herbert Weaver.
The judgment of conviction should be affirmed, but the case should be remanded to the trial court with directions that another sentence hearing be conducted with reasonable notice to the parties in the instant case and their attorneys to give them an opportunity to attend such hearing and to offer any evidence that would shed any light upon the question whether this appellant was the defendant in each or any of the mentioned cases in which the defendant was convicted of a felony. If, but only if, the trial court is convinced at the additional sentence hearing that this appellant was not the defendant in each of the mentioned cases, the trial court shall modify the previous sentence in the instant case so as to comply with the law and with the best judgment of the trial court as to an appropriate sentence. The trial court will make due return to this order of remandment with a copy thereof to each of the parties. Either party aggrieved by the judgment of the trial court at the additional sentence hearing will have fourteen days within which to file a brief with this Court, and the opposing party will have seven days thereafter within which to file a reply brief.
The foregoing opinion was prepared by Retired Circuit Judge LEIGH M. CLARK, serving as a judge of this Court under the provisions of § 6.10 of the Judicial Article (Constitutional Amendment No. 328); his opinion is hereby adopted as that of the Court.
AFFIRMED; REMANDED FOR PROPER SENTENCE.
All the Judges concur.
ON RETURN TO REMAND
LEIGH M. CLARK, Retired Circuit Judge.
By timely return to remand from the Clerk of the trial Court filed with the Clerk of this Court November 19, 1985, as to these two consolidated cases, we are informed that on October 2, 1985, an order was entered by the trial court in each of the cases as follows:
“On Remand the Court hereby sentences the defendant to Sixteen (16) years in the penitentiary of the State of Alabama as a Habitual Offender. Credit for time served.”
This Court has not received a brief from either of the parties as to the action taken by the trial Court in compliance with our order remanding the cases. We should now affirm the judgment of sentence as last rendered by the trial Court in each of the two cases.
AFFIRMED.
All the Judges concur.